UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.:

KIMBERLY SMEAD,

    Plaintiff,

v.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

    Defendant.
_____/

## COMPLAINT FOR DISABILITY BENEFITS

Plaintiff, Kimberly Smead, files her Complaint against Defendant, The Lincoln National Life Insurance Company, and says:

### I. JURISDICTION AND VENUE

1.    Plaintiff's claims are filed pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Jurisdiction exists pursuant to 29 U.S.C. § 1132(f) and venue is proper pursuant to 29 U.S.C. § 1132(e).

### II. PARTIES

2.    Plaintiff, Kimberly Smead ("Ms. Smead" or "Plaintiff"), is a citizen of the United States and was at all times relevant a participant of the long-term disability insurance policy (the "LTD Policy") at issue. Defendant, The Lincoln National Life Insurance Company ("Defendant"), is the insurer and claims administrator of the LTD Policy, and is a foreign corporation authorized to do business in Florida and can be found in the Southern District of Florida.

### III.   FACTS

3. At all times material to this action there was in full force and effect a group LTD Policy constituting a binding contract of insurance between the parties. The LTD Policy was underwritten and administered by Defendant.

4. At all times material, Defendant operated under an inherent structural conflict of interest because of the Defendant's dual role as administrator of claims while serving as the insurance company paying benefits out of its own assets.

5. Ms. Smead was employed with Nuvance Health Group as a physical therapist . By virtue of her employment at Nuvance Health Group, Ms. Smead was an eligible participant of the LTD Policy at all times material to this action.

6. The purpose of the LTD Policy was to provide Ms. Smead a monthly benefit in the event that she became disabled ("LTD benefits").

7. The LTD Policy defines Disability, in pertinent part, as follows:[1]

"**Disability**" or "**Disabled**" means:

1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:
   Applicable to Class 7, 9:

   a. if the Covered Person is eligible for the Maximum Own Occupation benefit, "**Disability**" or "**Disabled**" means during the Elimination Period and until the Covered Person reaches the end of the Maximum Benefit Period, as a result of an Injury or Sickness, he is unable to perform the Material and Substantial Duties of his Own Occupation.

   Applicable to Class 8, 10, 11, 12

   b. i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, "**Disability**" or "**Disabled**" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
      ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

---
[1] This definition is taken from Defendant's September 2, 2022 letter denying Ms. Smead's LTD benefit appeal.

8.      The LTD Policy contains a Pre-Existing Condition Exclusion, defined, in pertinent part, as follows:

> *Pre-Existing Condition Exclusion(s)*
> *This policy will not cover any Disability or Partial Disability:*
> *1. which is caused or contributed to by, or results from, a Pre-Existing Condition; and*
> *2. which begins in the first 12 months immediately after the Covered Person's effective date of coverage.*
>
> *"Pre-Existing Condition"* means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage.
>
> *"Treatment"* means consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines.
>
> *"Injury"* means bodily impairment resulting directly from an accident and independently of all other causes.
>
> *"Sickness"* means illness, disease, pregnancy or complications of pregnancy.

9.      Ms. Smead's effective date of coverage under the LTD Policy is December 1, 2020.

10.     The three-month period before her effective date of insurance coverage is September 1, 2020 to November 30, 2020 ("look-back period").

11.     On March 19, 2021, Ms. Smead became absent from work for medical reasons.

12.     On April 6, 2021, four (4) months after the look-back period, Ms. Smead underwent magnetic resonance imaging ("MRI") that showed a sciatic notch tumor now exerting mass effect on the neurovascular bundle.

13.     On June 24, 2021, Ms. Smead underwent surgery to resect the sciatic notch tumor. Her tumor involved the sciatic nerve and during the procedure it also involved her obturator nerve. During surgery, the obturator nerve was sacrificed in order to remove the tumor and the sciatic nerve sustained injury when attempting to remove the tumor.

3

14. This nerve injury was confirmed by an electromyography dated October 11, 2021.

15. This nerve injury results in Ms. Smead experiencing neuropathic pain and foot drop.

16. Ms. Smead is Disabled as a result of this nerve injury.

17. Ms. Smead has not returned to work since she left on March 19, 2021.

18. Ms. Smead submitted her LTD claim pursuant to the terms of the LTD Policy.

19. On March 25, 2022, Defendant denied Ms. Smead's LTD claim alleging that she received Treatment for her Disability during the look-back period based on an MRI taken in September 2020 that showed a benign fat-containing mass adjacent to the left piriformis and coursing through the sciatic notch. Therefore, Defendant concluded Ms. Smead's Disability was excluded by the Pre-Existing Condition limitation.

20. By letter dated April 20, 2022, Ms. Smead timely appealed Defendant's decision to deny her LTD benefits.

21. In her appeal letter, Ms. Smead explained "[t]here was no mention by any physician of a tumor until April 2021. Only at that point a treatment plan was put into place."

22. In support of her Appeal, Ms. Smead submitted a letter written on or around April 27, 2022, from her treating physician and surgeon, Dr. Kelly Olino, M.D.

23. Dr. Olino explained she first saw Ms. Smead in "May of 2021 for a symptomatic sciatic notch tumor with concern for atypical lipomatous tumor or well differentiated liposarcoma. She had previously been entirely asymptomatic from this lesion."

24. Dr. Olino reported "[t]he mass grew and then became symptomatic only at the time of [the April 6, 2021 MRI]."

25. In a letter provided in or around July 2022, Dr. Olino states "[i]t seems to be inconceivable that someone could surmise that this was a pre-existing condition if a patient was never advised that a condition actually existed."

26. Dr. Olino also clarified that the September 2020 MRI was unrelated to her tumor; rather, that "scan was done to look for pelvic congestion syndrome."

27. By letter dated September 2, 2022, Defendant denied Ms. Smead's appeal.

28. Ms. Smead exhausted her appeals under ERISA.

29. Since March 19, 2021, Ms. Smead has continuously met the LTD Policy's definition of "Disability" or "Disabled."

30. In denying Ms. Smead's LTD benefits, Defendant improperly applied the Pre-Existing Condition Exclusion.

31. The denial of Ms. Smead's LTD benefits was a breach of the terms of the LTD Policy, and the decision was wrong and arbitrary and capricious.

32. Defendant's denial of Ms. Smead's Disability benefits breached the fiduciary duties owed to Ms. Smead under ERISA. Defendant further failed to discharge its duties in respect to claims processing solely in the interests of Ms. Smead as a participant of LTD Policy.

### IV. COUNT I: LONG-TERM DISABILITY BENEFITS

Plaintiff incorporates the allegations contained in Paragraphs 1 through 32 as if fully stated herein and says further that:

33. Plaintiff is entitled to certain benefits of the policy consisting of past LTD benefits including prejudgment interest, retroactive to the day benefits were denied pursuant to 29 U.S.C. §1132(a)(1)(B).

34. Plaintiff is entitled to the benefits identified herein because:

    a. the benefits are permitted benefits under the LTD Policy;

    b. Plaintiff has satisfied all conditions to be eligible to receive the LTD benefits;

    c. Plaintiff has not waived or otherwise relinquished her entitlements to the benefits.

35. Defendant has refused to pay the benefits sought by Ms. Smead, ignoring the conclusions of her physicians, and improperly applying the Pre-Existing Condition Exclusion.

## VI. RELIEF REQUESTED

Plaintiff incorporates the allegations contained in Paragraph 1 through 35 as if fully stated herein and says further that:

36. As a result of the acts and/or omissions of Defendant as alleged herein, Defendant owes Plaintiff unpaid LTD benefits, plus interest.

37. Because Defendant's denial of LTD benefits is a violation of Subchapter I of Title 29, Chapter 18 of the United States Code, Plaintiff is entitled to attorney's fees and the costs of litigation in an amount to be proven at trial, pursuant to 29 U.S.C. §1132(g)(1).

38. Defendant is also liable to place Plaintiff in the position she would have enjoyed under the LTD Policy had she not been wrongfully denied LTD benefits by Defendant.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Kimberly Smead, prays for a judgment against Defendant, The Lincoln National Life Insurance Company, for the relief as pleaded herein and for such other relief as this Honorable Court deems just and proper.

*Respectfully submitted this 2nd day of November 2022.*

*/s/ Bryn Natland*
Bryn Natland (FBN. 86604)

bryn@longtermdisability.net
Edward Philip Dabdoub (FBN. 45685)
eddie@longtermdisability.net
DABDOUB LAW FIRM, P.A.
1600 Ponce de Leon Blvd., Suite 1202
Coral Gables, Florida 33134
Tel: (305) 754-2000
Fax: (305) 754-2007
*Attorneys for Plaintiff*